# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
## Richmond Division

MICHAEL TAYLOR,

    Plaintiff,

v.

SAFERENT SOLUTIONS, LLC
formerly CORELOGIC RENTAL
PROPERTY SOLUTIONS, LLC.,    Civil Action No. 3:22-cv-342

and

CORELOGIC BACKGROUND DATA, LLC.,
formerly CORELOGIC NATIONAL
BACKGROUND DATA, LLC,

    Defendants.

## COMPLAINT

COMES NOW the Plaintiff, MICHAEL TAYLOR, by Counsel, and for his Complaint against Defendants, SafeRent Solutions, LLC, formerly CoreLogic Rental Property Solutions, LLC ("SafeRent") and CoreLogic Background Data, LLC., formerly CoreLogic National Background Data, LLC ("NBD") (collectively, "Defendants") states as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, costs and attorneys' fees brought pursuant to 15 U.S.C. § 1681e(b) and 15 U.S.C. §1681k of the Fair Credit Reporting Act ("FCRA").

2. The FCRA requires that companies like the Defendants—which sell employment background check reports that have a serious and decisive impact on the ability of consumers to obtain and follow employment opportunities—employ reasonable procedures to assure the maximum possible accuracy of the information they report. Congress described these obligations

placed on consumer reporting agencies as "grave responsibilities." 15 U.S.C. § 1681. Defendants failed to treat these obligations accordingly, and despite knowing that their underlying data and "matching" algorithms that selected records for inclusion into consumer reports had serious deficiencies, they continued to sell reports anyway to the detriment of consumers like Plaintiff.

3. At all times relevant, Defendants were in the business of generating and selling consumer reports to be used for employment screening purposes. Defendants actively marketed their ability to produce these consumer reports to a nationwide network of hundreds of resellers.[1] Defendants actively solicited business from resellers[2] that they knew would provide consumer reports to their employer clients nationwide. Each time a reseller customer submitted a query to Defendant NBD, that customer provided the end user state and report user state for the consumer report to be generated by SafeRent from its database and then furnished to NBD for sale to its customer. The customer also identified that the report provided by Defendants would be used for employment purposes. In other words, Defendants knew (a) the state of the employer (end user) seeking the background check report from the reseller customer and (b) that the employer intended to use that report to make decisions regarding employment of the subject of the report. Defendants knew that the consumer reports generated and furnished were to be used for an employment purpose because each request for a report by Defendant NBD's customers required submission of a "permissible purpose code" to Defendants, and this code identified employment use as the permissible purpose. Plaintiff knows these allegations to be factually accurate because his counsel

---

[1] "Resellers act as information brokers, buying large volumes of consumer reports at discount rates from other CRAs and reselling the data to lower volume buyers." National Consumer Law Center, *Fair Credit Reporting*, Ch. 2.6.3.1 (9th ed. 2017), *updated at* www.nclc.org/library.

[2] Defendant NBD had over 470 "reseller" customers in 2016. (Oct. 25, 2015 L. Watts Dep. Tr. 44:23-46:21, Ex. 4 at 2 from *Witt v. CoreLogic National Background Data, LLC*, Civil Action No. 3:15-cv-386-REP). The clients of these customers "consist of employers in a wide variety of industries, from healthcare to bakeries, in a wide variety of jobs ranging from entry level manual labor positions to executives." (*Id.* Ex. 4 at 2).

have a complete copy of Defendant NBD's database of consumer reports generated and requested by its customers from March 14, 2007 through November 3, 2016. This database also includes the information the customers submitted to Defendant NBD when requesting reports.

4. Defendant NBD previously faced two class actions which, as detailed below, relate to this case. In *Henderson v. CoreLogic National Background Data, LLC*, Civil Action No. 3:12-CV-97 (E.D. Va.), the Plaintiffs asserted class claims for Defendant NBD's uniform failure to comply with key provisions of the FCRA requiring it to provide notice to consumers notice "at the time" that it published consumer reports for employment purposes containing derogatory public record information (as required by 15 U.S.C. § 1681k(a)(1)), or in the alternative, to follow strict procedures designed to ensure that the information published was "complete and up to date" (as required by 15 U.S.C. §1681k(a)(2)). In *Henderson*, Defendant NBD unsuccessfully argued that "§ 1681k(a) does not apply to it because its wholesale results are not 'consumer reports" furnished for 'employment purposes' that are 'likely to have an adverse effect on a consumer's ability to obtain employment.'" *Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 324–25, 2016 WL 1574048 (E.D. Va. 2016). *Henderson* recognized that NBD's "own documents…acknowledge[d] that it resells consumer reports" and "specif[ied] that the data NBD obtains from SafeRent and provides to its client shall be used for one of a limited number of 'permissible purposes' as defined by the FCRA, including 'employment purposes.'" *Id.* at 327-28. The Court also rejected NBD's argument that it in fact followed strict procedures to ensure that its consumer reports were complete and up to date. *Id.* at 335-38 ("[i]t is simply not complete under the FCRA to say that 'someone named Bill Jones has a conviction record, but whether this is the Bill Jones you are inquiring about, I do not know.' Yet, that is precisely what NBD acknowledges to be the result that it provides.")

5.	Defendant NBD ultimately agreed to a class action settlement in *Henderson*, paying $7,540,000 into a settlement fund and acceding to injunctive relief mandating that it (a) employ more rigorous matching procedures for results it returned to its public records customers, (b) establish a website to allow settlement class members to access their criminal record data from Defendant SafeRent's database, and (c) create a dedicated process to receive and investigate disputes from settlement class members.

6.	In *Witt v. CoreLogic National Background Data, LLC*, Civil Action No. 3:15-cv-386-REP, Defendants NBD and SafeRent defended class claims for violating 15 U.S.C. § 1681k(a) (both Defendants), furnishing consumer reports to NBD without an FCRA permissible purpose to do so (SafeRent), and use and resale of these consumer reports by NBD without an FCRA permissible purpose to do so (NBD). In *Witt*, Defendants unsuccessfully sought transfer to "the center of gravity for the conduct in question, the United States District Court for the District of Maryland." Defs'. Mem. Supp. Mot. Dismiss or Transfer Venue, ECF No. 52 at 2 (Feb. 16, 2016).[3] In seeking to transfer venue, Defendants acknowledged the nationwide (1) scope of their customer base and (2) dissemination of their consumer reports. Decl. of Suzette Lesane, ECF No. 52-4. Defendant SafeRent's Vice President of Product Development executed a declaration under penalty of perjury stating, in part:

> 11. SafeRent's tenant screening reports are provided to clients in all fifty (50) states, and those clients are not concentrated in any particular state. Over the prior two year period, SafeRent has issued 4% of its total number of tenant screening reports to properties that are located within Virginia.
>
> 12. NBD's customers that have been granted access to SafeRent's Multistate Database are located across the country and are not concentrated in any particular state….

---

[3] Defendants further stated that *Witt* "could have been brought in the United States District Court for the District of Maryland…[b]ecause a substantial portion of the acts giving rise to this action occurred in [] Maryland." *Id.* at 18.

4

*Id.* at 2.

7. Defendants agreed to class action settlements in *Witt*, one for a settlement class under Rule 23(b)(2) and another for a settlement class under Rule 23(b)(3). The Rule 23(b)(2) settlement provided for injunctive relief akin to that agreed to in the *Henderson* settlement and attorney's fees for class counsel. The Rule 23(b)(3) settlement obligated Defendants to pay $2,904,700 into a settlement fund. Plaintiff was a member of the Rule 23(b)(2) settlement class in *Witt*.

8. None of the settlement class members in *Henderson* and *Witt* released individual claims for actual damages or attorney's fees and costs under the FCRA. The *Witt* Rule 23(b)(2) class members only released their right to file or participate in a putative class action based upon the allegations or claims asserted in *Witt*.

9. Extensive discovery occurred in *Henderson* and *Witt*, including depositions of corporate designees and individual witnesses, interrogatories, and document production that included a complete copy of Defendant NBD's "Results Returned" database containing all of the information generated as a result of each NBD customer search from March 14, 2007, through November 3, 2016. The "Results Returned" database also includes the entirety of the information submitted by Defendant NBD's customers in the "Request" table. The "Request" table reflects end user state and employer user state submitted for each employment report request by Defendant NBD's customers. The full address for the consumer (at the time of the report request) provided by the requester also appears in the "Request" table. The discovery from *Henderson* and *Witt* already in the possession of Plaintiff's counsel establishes the inadequacy of the matching procedures employed by Defendants' when generating and furnishing one or more consumer reports that, as a practical matter, conclusively determined Plaintiff's eligibility for employment with the employer requesting the report(s).

10. Between *Henderson* and *Witt*, the following employees of Defendants were deposed: Linda H. Watts (as corporate designee)—Operations Manager of Defendant NBD from 2010 (approximately) to August 1, 2016 (Oct. 25, 2015 L. Watts Dep. Tr. 7:20-8:1, 9:22-10:4); Matthew C. Knowles—Manager of Data Operations for Defendant SafeRent (Mar. 28, 2017 M. Knowles Dep. Tr. 7:3-5, 13:15-14:18); Sharron Goodman—Client Delivery Manager/Client Service Manager for Defendant NBD (Oct. 25, 2016 S. Goodman (Rough) Dep. Tr. 4-5). Class counsel also deposed Michael J. Hall, then Senior Director of Data Operations for CoreLogic, Inc.[4] (Oct. 24, 2016 M. Hall Dep. Tr. 7:7-8:9).

11. Defendant NBD sold criminal and employment-purposed background checks solely on a wholesale basis, i.e., directly to its reseller customers.[5] Consumers did not typically even know that an employment report originated from Defendant NBD, much less Defendant SafeRent. Defendant NBD touted its "work in the background to deliver the industry-leading background information search solutions [the employer clients of reseller background check companies] want [.]"[6] As its marketing materials boast:

> National Background Data by CoreLogic® works behind the scenes to quickly deliver clear, consistent criminal background information. . . . We sell exclusively through a network of carefully selected background screening providers. Which means all your customers see is YOU—and the concise, targeted, easy-to-read reports you deliver to them.

2012 NBD Marketing Materials, produced by Defendant NBD in *Henderson* at Bates number CL-H002764. Given the lack of any indicia of Defendant NBD's involvement in the preparation of background reports by its customers and the likelihood that the subject consumer might never even see the "reseller" report at all, Plaintiff lacked any awareness of Defendants' preparation of one or

---

[4] As the deposition date, CoreLogic, Inc. was the parent company of Defendants.
[5] http://www.corelogic.com/solutions/national-background-data.aspx (last visited Jan. 4, 2014).
[6] https://www.nationalbackgrounddata.net/marketing/about_us.html (last visited Jan. 4, 2014).

more highly damaging consumer reports about him for use in evaluating his eligibility for employment until he received notice of the proposed settlements in *Witt*.

12. The FCRA includes both a two-year statute of limitations (based on discovery) and a separate five-year statute of repose. 15 U.S.C. § 1681p; *see also Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010) ("We consequently hold that 'discovery' as used in [the Securities Exchange Act of 1934] encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known.")[7]; *Feraro v. Impac Funding Corp.*, No. 5:12-CV-00322-EJD, 2012 U.S. Dist. LEXIS 76466, at *6 (N.D. Cal. June 1, 2012) ("The structure of the statute of limitations—in particular, the existence of that grace period—demonstrates that the five-year limit is intended to be absolute."). Because Plaintiff lacked any awareness (or reason to be aware) of Defendants' violations of the FCRA before receiving notice of the proposed class action settlement, he was subject to the five-year statute of repose until receiving such notice. The earliest possible date of Plaintiff's "discovery" of Defendant's FCRA violations coincides with his receipt of notice of the class action settlement.

13. Under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) and its progeny, the FCRA statute of limitations applicable to Plaintiff's claims against Defendants was tolled by the filing of the complaints in *Henderson* and/or *Witt*. Following the conclusion of that proceeding, by agreement of Plaintiff and Defendants, tolling of the FCRA's statute of limitations and statute of repose as to Plaintiff's claims has continued uninterrupted through the filing of this Complaint.

---

[7] "[T]he ultimate burden is on the defendant to demonstrate that a reasonably diligent plaintiff would have *discovered* the facts constituting the violation." *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012) (citing *Merck & Co., Inc. v. Reynolds*). The statutory language regarding "discovery" addressed by *Merck* is very similar to the "discovery" language in 15 U.S.C. § 1681p.

## JURISDICTION

14. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue is proper Defendants have regularly conducted business in this District and Division. Defendants sold one or more consumer reports about Plaintiff containing highly derogatory and false public records information knowing that the report(s) would be delivered to an employer to be used to evaluate Plaintiff's eligibility for employment.

## PARTIES

15. Plaintiff is a natural person. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

16. Defendant SafeRent regularly conducts business in this state, directs business at this state, and maintains its corporate headquarters in Irving, Texas. SafeRent is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. SafeRent currently sells and has sold consumer reports nationwide for many years. It maintains an extensive database of public records regarding consumers. With respect to Plaintiff, SafeRent sold one or more consumer reports generated from the database and furnished such report(s) to its sister company, Defendant NBD. NBD then sold the report(s) to one or more "reseller" consumer reporting agencies who, in turn, rebranded them and sold them to one or more employers located in this state for use in making employment decisions. Before and after selling the report(s) at issue in this case, Defendant NBD directed business at this state by selling numerous reports to its customers that it knew would be forwarded to employers in this state.

### *Factual Allegations*

17. In March 2014, Plaintiff applied for employment with two or more prospective employers and submitted to background checks. These prospective employers requested background checks from third-party reseller consumer reporting agencies, OmniData and

8

CastleBranch that in turn requested full background reports regarding the Plaintiff from the Defendant NBD, who in turn requested reports from its sister company, Saferent.

18. In March 2014, Defendants published consumer reports to the resellers, Omni Data and Castle Branch, regarding Plaintiff for use in employment purpose consumer reports to be used by Teller Mortuary and Ops Research to evaluate Plaintiff's eligibility for employment.

19. In March 2014, Defendants' produced consumer reports on at least two occasions regarding Plaintiff, indicating that he had been convicted of serious sexual crimes in various states, including but not limited to child molestation, rape, sexual battery, sodomy, forcible sodomy, aggravated sexual battery, sexual abuse, lewd lascivious acts with a child, indecent liberties with children and second degree sexual assault and published these consumer reports to third-party resellers, Omni Data and Castle Research, for use in employment purpose background reports to be published to Plaintiff's prospective employers. In addition, Defendants reported that Plaintiff was a registered sex offender in Georgia, Indiana, Missouri, Utah, Virginia, Wisconsin, and North Carolina.

20. Plaintiff is not nor has he ever been a registered sex offender, nor has he ever been convicted of the sexual crimes listed in the preceding paragraph.

21. Defendants' publication(s) of false reports and public record information about Plaintiff would not have occurred but for the failure of Defendants NBD and SafeRent to follow reasonable procedures to assure the maximum possible accuracy of the information in their consumer reports. Further, Defendants failed to provide notice to Plaintiff "at the time" that each Defendant published the report(s) to a third party (as required by 15 U.S.C. § 1681k(a)(1)), or in the alternative, to follow strict procedures designed to ensure that the information published was "complete and up to date" (as required by 15 U.S.C. §1681k(a)(2)).

22. The inaccurate report(s) caused Plaintiff substantial hardship, and Plaintiff suffered damage to reputation, humiliation, loss of sleep, anxiety, and embarrassment because of Defendants NBD and SafeRent's violations of the law.

23. As a result of NBD and SafeRent's violations of 15 U.S.C. §§ 1681e(b), 1681k(a)(1), and 1681k(a)(2), Plaintiff suffered actual damages, including but not limited to: increased risk of denial or termination of employment, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### COUNT ONE – VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)

24. Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

25. Defendants NBD and SafeRent failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in the consumer report(s) that each sold regarding the Plaintiff.

26. The conduct, action and inaction of Defendants was willful, rendering Defendants liable for actual, statutory, and punitive damages, attorneys' fees, and costs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, conduct, action, and inaction of Defendants was negligent, rendering Defendants liable for actual damages, attorneys' fees, and costs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

27. As a result of NBD and SafeRent's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: increased risk of denial or termination of employment, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

28. Plaintiff is entitled to recover actual, statutory, and punitive damages and attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n. Alternatively, Plaintiff is entitled to recover actual damages and attorneys' fees and costs in an amount determined by the Court pursuant to 15 U.S.C. § 1681o.

## COUNT TWO – VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681k(a)(1) and 1681k(a)(2)

29. Plaintiff realleges and incorporates all paragraphs above as if fully setout herein.

30. On one or more occasions, each Defendant failed to send the required § 1681k(a)(1) notice to Plaintiff that it had provided an employment-purposed consumer report to a user that contained public record information of the type that is likely to have an adverse effect on a consumer's ability to obtain or maintain employment.

31. Similarly, at all times relevant, Defendants did not ever follow strict procedures designed to ensure that they only furnish complete and up-to-date public records. In fact, Defendants uniformly failed to sell or furnish the complete public record and instead only obtained and provided very limited data available through a batch and/or automated pickup.

32. Plaintiff was unaware of these violations until the information was provided to him in the notice in connection with class action proceedings in the U.S. District Court for the Eastern District of Virginia.

33. Defendants' failure to timely provide the required FCRA notice(s) to Plaintiff violated 15 U.S.C. § 1681k(a)(1).

34. Defendants' failure to follow strict procedures designed to ensure that they did not furnish incomplete or out-of-date public records regarding Plaintiff violated 15 U.S.C. § 1681k(a)(2).

35. The conduct, action and inaction of Defendants was willful, rendering Defendants liable for actual, statutory, and punitive damages, attorneys' fees, and costs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, conduct, action, and

inaction of Defendants was negligent, rendering Defendants liable for actual damages, attorneys' fees, and costs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

36. As a result of Defendants' conduct, Plaintiff suffered particularized and concrete injuries, including being robbed of his congressionally-mandated right to information to which Congress has deemed him entitled. Access to this information is important because (1) it is highly personal in nature; (2) it is maintained and reported by third parties to whom Plaintiff had no pre-existing relationship; (3) it is ultimately sold to third parties to whom Plaintiff is applying for employment without Plaintiff having the opportunity to view it in advance; and (4) it is potential determinative information in extremely important interactions—applications for employment or credit.

37. Having been denied this important information, Plaintiff was harmed because he did not know what information was circulated about him and by whom and was subsequently denied an opportunity to correct inaccurate or obsolete information. As a result, Plaintiff was at an increased risk to be denied employment.

38. Plaintiff is entitled to recover actual, statutory, and punitive damages and attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Plaintiff is entitled to recover actual damages and attorneys' fees and costs in an amount determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Your Plaintiff demands judgment for actual, statutory, and punitive damages against the Defendants; for his attorneys' fees and costs; for prejudgment and post judgment interest at the legal rate; and such other relief the Court does deem just, equitable and proper.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

Respectfully submitted,

MICHAEL TAYLOR,


BY:_____/s/_____
    Leonard A. Bennett, VSB #37523
    Craig C. Marchiando, VSB #89736
    Drew D. Sarrett, VSB #81658
    **Consumer Litigation Associates, P.C.**
    763 J. Clyde Morris Boulevard, Suite 1-A
    Newport News, VA 23601
    Telephone: (757) 930-3660
    Facsimile: (757) 930-3662
    Email: lenbennett@clalegal.com
    Email: craig@clalegal.com
    Email:  drew@clalegal.com